**19 MAG 11431**

ORIGINAL

Approved: _____
           MATTHEW J.C. HELLMAN
           Assistant United States Attorney

Before:    THE HONORABLE BARBARA MOSES
           United States Magistrate Judge
           Southern District of New York

------------------------------------X
                                    :  COMPLAINT
UNITED STATES OF AMERICA            :
                                    :  Violation of
           - v. -                   :  21 U.S.C. § 846
                                    :
LEONARDO BAUTISTA, and              :  COUNTY OF OFFENSE:
JOSE RAMIREZ-ENCARNARCION,          :  NEW YORK
                                    :
                    Defendants.     :
------------------------------------X

SOUTHERN DISTRICT OF NEW YORK, ss.:

   JULIAN HUR, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

### COUNT ONE
(Conspiracy to Distribute Narcotics)

   1.  In or about December 2019, in the Southern District of New York and elsewhere, LEONARDO BAUTISTA and JOSE RAMIREZ-ENCARNACION, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

   2.  It was a part and an object of the conspiracy that LEONARDO BAUTISTA and JOSE RAMIREZ-ENCARNACION, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

   3.  The controlled substances that LEONARDO BAUTISTA and JOSE RAMIREZ-ENCARNACION, the defendants, conspired to

distribute and possess with intent to distribute was one kilogram and more of mixtures and substances containing a detectable amount of heroin and fentanyl in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and the foregoing charge are, in part, as follows:

4. I am a Special Agent with the DEA. This affidavit is based on my personal participation in the investigation of this matter, my conversations with other law enforcement agents, my interviews of witnesses, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my own observations as part of the investigation, my conversations with other law enforcement officers, and my review of reports, I have learned the following, in substance and in part:

a. On or about December 5, 2019, a confidential source working with law enforcement ("CS-1") engaged in a telephone conversation with a male individual ("Broker-1") using a particular phone number ("Cellphone-1") regarding the purchase of narcotics.[1] During that conversation, Broker-1 stated, in substance and in part, that he could provide CS-1 with at least one kilogram of heroin. CS-1 informed Broker-1 that he was interested in purchasing the kilogram of heroin. Broker-1 then agreed to sell CS-1 the kilogram of heroin in New York, New York. Broker-1 and CS-1 agreed the transaction would occur in the vicinity of 10th Avenue and West 49th Street in New York, New York (the "Transaction Location"). Broker-1 then told CS-1, in substance and in part, that Broker-1 would not personally meet CS-1 at the transaction, but that another individual would

---

[1] CS-1 is working at the direction of the DEA in exchange for payment. Information provided by CS-1 has been deemed credible by law enforcement agents and is corroborated by other evidence, including video and audio recordings, and surveillance conducted by law enforcements agents.

contact CS-1 and arrange to meet for the purpose of the narcotics transaction.

b. A short time after the telephone conversation with Broker-1, CS-1 received a telephone call from a male individual using a particular phone number ("Cellphone-2"). The caller told CS-1, in substance and in part, that he worked with Broker-1, and would meet CS-1 for the transaction that CS-1 had discussed with Broker-1. The caller then agreed to meet CS-1 at the Transaction Location.

c. Later that day, CS-1 received a call from Cellphone-2. During that call, a male individual informed CS-1 that he was waiting in a car ("Car-1") stopped near the intersection of 10th Avenue and West 50th Street. CS-1 walked toward the intersection and observed Car-1 with one occupant in the driver's seat, later identified to be LEONARD BAUTISTA, the defendant, and one occupant in the front passenger seat, later identified to be JOSE RAMIREZ-ENCARNACION, the defendant. BAUTISTA stood outside of Car-1 and spoke with CS-1, and CS-1 directed BAUTISTA to parking approximately one block south. BAUTISTA then drove to the Transaction Location.

d. After BAUTISTA and RAMIREZ-ENCARNACION arrived at the Transaction Location and parked, CS-1 approached Car-1 and sat in the back seat. CS-1 then asked BAUTISTA and RAMIREZ-ENCARNACION, in substance and in part, to show CS-1 the kilogram. RAMIREZ-ENCARNACION then pulled a plastic bag from underneath his car seat. From inside the plastic bag, RAMIREZ-ENCARNACION removed a brick-shaped object consisting of hard, compacted white powder wrapped in clear plastic and secured with tape (the "Brick"). RAMIREZ-ENCARNACION then passed the Brick to CS-1.

e. CS-1 began inspecting the Brick, during which inspection BAUTISTA and RAMIREZ-ENCARNACION discussed, in substance and in part, the Brick. Among other things, BAUTISTA told CS-1 that he understood that CS-1 needed to test the contents of the Brick to determine the quality of the Brick's contents. BAUTISTA further advised CS-1 that he had also tested the Brick previously, and did so by making a small hole in the Brick's wrapping in a particular corner of the Brick. RAMIREZ-ENCARNACION then attempted to assist CS-1 in locating the hole BAUTISTA previously made, and RAMIREZ-ENCARNACION further advised CS-1, in substance and in part, that CS-1 could use the hole to examine a small sample of the Brick's contents.

      f.    Shortly after this exchange, I and other members of law enforcement approached CS-1's vehicle.

    6.    Based on my observations as part of this investigation, I learned the following:

      a.    On or about December 5, 2019, I and other members of law enforcement conducting surveillance observed the meeting between CS-1 and BAUTISTA and RAMIREZ-ENCARNACION, described above in paragraphs 5(c) through (e), *supra*. After approaching Car-1, I observed a male individual who was seated in the driver's seat, who was arrested and determined to be LEONARDO BAUTISTA, the defendant, and I further observed a male individual who was seated in the front passenger seat, who was arrested and determined to be JOSE RAMIREZ-ENCARNACION, the defendant.

      b.    While arresting BAUTISTA and removing him from Car-1, BAUTISTA stated, in substance and part, that he was there to receive a sample of "H-Synthetic" from CS-1. Based on my training and experience and my participation in this investigation, I believe "H-Synthetic" is a reference to synthetic heroin, which is also known as fentanyl.

      c.    After arresting RAMIREZ-ENCARNACION, during a search incident to that arrest, law enforcement observed and recovered an identification card bearing RAMIREZ-ENCARNACION's name and photograph, which identification card indicated that RAMIREZ-ENCARNACION was a Sergeant as a member of the national police in the Dominican Republic.

      d.    Law enforcement agents recovered the Brick from the rear seat of Car-1, and observed it to have a hole in one corner of the packaging. The Brick is depicted below:

 

4

    e. Law enforcement agents conducted a field test of the contents of the Brick, which test resulted in inconclusive results for the presence of heroin. The test further indicated the presence of controlled substances consistent with the appearance of field tests of fentanyl. Law enforcement agents weighed the Brick, and found it weighed approximately 1.08 kilograms.

    f. I observed BAUTISTA to have in his possession two cellular telephones, and RAMIREZ-ENCARNACION to have in his possession one cellular telephone. I further observed that when an attempt was made to place a call using the Cellphone-2 number, RAMIREZ-ENCARNACION's phone began to ring, indicating that RAMIREZ-ENCARNACION's phone is the Cellphone-2 number, which, as discussed above, was used to facilitate the narcotics transaction described *supra*.

  WHEREFORE, deponent respectfully requests that LEONARDO BAUTISTA and JOSE RAMIREZ-ENCARNACION, the defendants, be imprisoned or bailed, as the case may be.

_____
JULIAN HUR
Special Agent
Drug Enforcement Administration

Sworn to before me this
6th day of December, 2019

_____
THE HONORABLE BARBARA MOSES
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

5